# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SHERWIN P. BROWN and JAMERICA FINANCIAL, INC.,<br><br>Defendants. | Civil No. 14-5057 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER** |

Andrew P. O'Brien, Alyssa A. Qualls, and Charles J. Kerstetter, **UNITED STATES SECURITIES & EXCHANGE COMMISSION**, 175 West Jackson Boulevard, Suite 900, Chicago, IL 60604, and James S. Alexander, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Sherwin P. Brown, 102 N.E. Second Street, Boca Raton, FL 33432, *pro se*.

Plaintiff the Securities and Exchange Commission ("SEC") moves for a default judgment against Defendants Sherwin P. Brown and Jamerica Financial, Inc. ("Jamerica"). The SEC alleges that Brown violated an SEC order and that both Brown and Jamerica violated Section 203(f) of the Advisers Act by continuing to associate with an investment adviser after 2011. The SEC requests a permanent injunction, disgorgement with prejudgment interest, and a civil penalty against both Brown and Jamerica. For the reasons that follow, the Court will grant the SEC's motion for default judgment, order disgorgement with prejudgment interest in the amount of $373,914.75, and issue a permanent injunction enjoining Brown and Jamerica from further violating

the SEC order and Section 203(f) of the Advisers Act. Finally, the Court will impose a civil penalty of $50,000 against Brown and $100,000 against Jamerica.

## BACKGROUND

This case relates to a prior action brought by the SEC against Brown and Jamerica Financial. In that case, this Court granted summary judgment in favor of the SEC, finding that Brown and Jamerica had violated the Securities Act, the Exchange Act, and the Advisers Act. *SEC v. Brown*, 579 F. Supp. 2d 1228, 1235-38 (D. Minn. 2008). The Court found that "[t]he unrefuted evidence demonstrates that Brown received more than $1.62 million for the purpose of investing in" a company but that a significant portion of those funds were instead transferred to Jamerica or Brown or used for personal expenditures. *Id.* at 1236-37. The Court issued permanent injunctions enjoining Brown and Jamerica Financial from committing certain violations of the Securities Act, the Exchange Act, and Sections 204 and 206 of the Advisers Act. *SEC v. Brown*, No. 06-1213, 2010 WL 1780144, at *2-3 (D. Minn. Apr. 30, 2010). The Court ordered disgorgement with prejudgment interest totaling over one million dollars and civil penalties totaling $480,000 between Brown and Jamerica Financial. *Id.* at *4-5.

The SEC also instituted administrative proceedings against Brown and Jamerica, which culminated in a June 17, 2011, order (the "2011 SEC Order") barring Brown and Jamerica "from association with any investment adviser" and revoked Jamerica's registration as an investment adviser. (Decl. of Andrew P. O'Brien ("O'Brien Decl."), Ex. A, July 14, 2015, Docket No. 25.)

The SEC now alleges that since the 2011 SEC Order, "Brown has continued to provide investment advisory services." (Compl. ¶ 18, Dec. 23, 2014, Docket No. 1.) Specifically, between June 30, 2011 and May 8, 2014, more than 100 checks – made out to Brown, Jamerica, or both – have been deposited in an account held by Jamerica Financial at Wells Fargo Bank (the "Jamerica Account"). (*Id.* ¶ 19; O'Brien Decl., Ex. C.) The checks total more than $330,000. (Compl. ¶ 19; O'Brien Decl., Ex. C.) Several of the checks themselves suggest that they were written as payment for investment advisory services, with memo lines reading "2012 Investment fee," "2012 Portfolio Mgmt Fee," and "2013 Financial Mgmt Services." (O'Brien Decl., Ex. D.) Bank documents suggest that Brown is the only authorized signer on the Jamerica Account. (*Id.*, Ex. E.) Additionally, Brown's personal savings account application, dated January 9, 2014, states that Jamerica was his employer. (*Id.*, Ex. F.)

In response to the SEC's subpoena requesting documents and testimony from Brown on this matter, Brown asserted his Fifth Amendment right against self-incrimination. (*Id.*, Exs. G, H.) Among other things, Brown stated that he refused to answer questions or produce documents relating to whether he violated the 2011 SEC Order and whether he was "for compensation, advising others, either directly and/or through publications or writings, as to the value of securities or the advisability of investing in, purchasing or selling securities." (*Id.*, Ex. H at 4.)

According to the SEC, "neither Brown nor Jamerica Financial has sought the consent of the SEC to act as or to associate with an investment adviser" and the SEC has

not consented to either Brown or Jamerica acting as or associating with an investment advisor since the issuance of the 2011 SEC Order.  (Compl. ¶¶ 28-30.)

On December 23, 2014, the SEC filed the present action.  The SEC served Jamerica at its primary business address on February 17, 2015, and personally served Brown on February 21, 2015.  (Notice Regarding Service of Process, Mar. 17, 2015, Docket No. 10.)  On March 17, 2015, Brown sent a letter to the Court requesting a 90-day extension to file his answer to "resolve . . . attorney issues."  (Letter to District Ct., Mar. 17, 2015, Docket No. 11.)  On June 22, 2015, more than 90 days after Brown's letter, the SEC requested that the Clerk of Court enter default in its favor, and the Clerk entered default against both parties.  (Pl.'s Request for Entry of Default, June, 22, 2015, Docket No. 17; Clerk's Entry of Default, June 22, 2015, Docket No. 20.)

The SEC now moves this Court to enter default judgment, and requests disgorgement, a permanent injunction, and civil penalties against both Brown and Jamerica.

## ANALYSIS

### I. DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "A judgment of default may, thereafter, be entered on application to the Court."  *Semler v. Klang*, 603 F. Supp. 2d 1211, 1218 (D. Minn. 2009); *see also* Fed. R.

Civ. P. 55(b).  "The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court." *FTC v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977).  There is a strong judicial policy against default judgments and a "preference for adjudication on the merits."  *See Oberstar v. FDIC*, 987 F.2d 494, 504 (8th Cir. 1993).

Here, the Court will grant the SEC's request for default judgment.  The SEC has shown that Brown and Jamerica Financial continued to act as investment advisers after June 17, 2011.  Section 202(a)(11) of the Advisers Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities."  15 U.S.C. § 80b-2(a)(11).  A "person associated with an investment adviser" under the Advisers Act, includes "any partner, officer, or director of such investment adviser (or any person performing similar functions), or any person directly or indirectly controlling or controlled by such investment adviser."  *Id.* § 80b-2(a)(17).  It appears that both Brown and Jamerica have continued to work as investment advisers.  More than 100 checks, totaling more than $330,000, have been deposited in in the Jamerica Account between the time of the 2011 SEC Order and May 2014.  (O'Brien Decl., Ex. C.)  Many of those checks were written by individuals from Brown's 2006 client list.  (*Id.*; O'Brien Decl. ¶ 8.)   Additionally, a number of the checks included memo lines suggesting they were payment for investment services, including "2012 Investment Fee" and "2012 Advisory Fees."  (*Id.*, Ex. D.)  Finally, the SEC states that its staff spoke with a number of Brown's clients, who reported that he advises them on their investments.  (O'Brien

Decl. ¶ 5.) Thus, it appears that Brown violated the 2011 SEC Order by willfully associating with an investment adviser – himself and Jamerica. Similarly, Brown and Jamerica both violated Section 203(f) of the Advisers Act by becoming or being associated with an investment advisor without consent of the SEC. 15 U.S.C. § 80b-3(f) (prohibiting barred individuals from willfully becoming or being "associated with an investment adviser without the consent of the Commission").

Brown's response to the present motion does not call into question such a finding. In fact, Brown states in his response to this motion, "dozens and dozens of clients retained their trust in me after the SEC made allegations against me." (Def.'s Resp. at 2, Nov. 25, 2015, Docket No. 38.) Brown also referred to Jamerica as a "defunct corporation that has been inactive for over eight years," (*id.* at 4), even though more than 100 checks were deposited into the Jamerica Account between 2011 and 2014 – many of them made out to Jamerica, (O'Brien Decl., Exs. C, D), and even though Brown's application for his personal savings account suggests that he worked at Jamerica in 2014, (*id.*, Ex. F).

Brown asked that the actions against him be "summarily dismissed and discharged" or transferred to Florida where he now lives. (*Id.* at 4-5.) To the extent that Brown is challenging the venue or jurisdiction in this Court, his argument fails. In this action, venue is proper "in any such district or in the district wherein the defendant is an inhabitant or transacts business." 15 U.S.C. § 80b-14(a). Brown has transacted business in Minnesota, and Jamerica is a resident of Minnesota. (O'Brien Decl., Ex. D; Compl. ¶ 8, 10.) Additionally, to the extent that Brown is moving the Court to transfer venue, his

request also fails.  Courts examine three factors when deciding a motion to transfer venue under 28 U.S.C. § 1404(a):  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice.  *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) (applying § 1404(a) factors).  The moving party must show that the balance of these factors "strongly favors" transfer.  *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1179 (D. Minn. 1996) (quoting *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F. Supp. 311, 315 (D. Minn. 1994)).  Here, Brown requests to transfer based solely on his inconvenience in litigating in Minnesota.  He also argues that the SEC would not be inconvenienced by litigating in Florida because there is an SEC office in Florida.  However, the SEC notes that the counsel litigating this case are located in Illinois, and thus, it would be more inconvenient for them to litigate in Florida.  Moreover, many of Brown and Jamerica's clients, who would be the primary witnesses, are located in or around Minnesota.  (*See* O'Brien Decl., Ex. D.)  Thus, even if Brown has moved this Court to transfer his action to Florida, the Court will decline to do so because these factors do not strongly weigh in favor of transfer.

The SEC timely served Brown and Jamerica, and they failed to respond – even with additional time to do so – resulting in the Clerk's entry of default on June 22, 2015.  Overall, the SEC has made a substantial showing that Brown and Jamerica violated the 2011 SEC Order and Section 203(f) of the Advisers Act, and Brown has given the Court no reason to doubt such a conclusion.  Accordingly, the Court will grant the SEC's request for a default judgment.

## II.   PERMANENT INJUNCTION

The SEC seeks a permanent injunction preventing the defendants from future violations of the securities laws.  To obtain an injunction in this context the SEC must show that (1) the defendants violated the law; and (2) "there [is] a *reasonable likelihood* of further violations in the future."  *SEC v. Comserv Corp.*, 908 F.2d 1407, 1412 (8th Cir. 1990) (quoting *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99 (2d Cir. 1978)).  The court "must assess the totality of the circumstances surrounding the defendant and his violations," and "[t]he existence of past violations may give rise to an inference that there will be future violations."  *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

Here, the Court finds that a permanent injunction is warranted.  Brown has a history of securities law violations.  In the prior action, Brown was held in contempt for violating a preliminary injunction, *see Brown*, 579 F. Supp. 2d at 1238, and now Brown has also violated the 2011 SEC Order by continuing to act as an investment advisor.  Additionally, Brown has shown no recognition of any wrongdoing, and still states that he is merely, "a life coach that helps my family and friends with ALL aspects of their lives." (Letter to District Ct.)  Overall, the Court finds that based on the totality of the circumstances, there is a reasonable likelihood that Brown will violate the 2011 SEC Order and Section 203(f) of the Adviser's Act in the future by continuing to act as or associate with investment advisors, and therefore, a permanent injunction is warranted.

## III.   DISGORGEMENT AND PREJUDGMENT INTEREST

The SEC also requests that the Court order disgorgement of Brown and Jamerica's ill-gotten profits with prejudgment interest. "The district court has 'broad discretion' in both determining whether or not to order disgorgement and in calculating the appropriate amount to be disgorged." *SEC v. Capital Sols. Monthly Income Fund, LP*, 28 F. Supp. 3d 887, 897 (D. Minn. 2014) (quoting *SEC v. Murray*, No. 05-4643, 2013 WL 839840, at *1 (E.D.N.Y Mar. 6, 2013)). "Disgorgement need not be exact, instead, courts need only find that the amount sought is a reasonable approximation of gains that are causally connected to a violation." *Id.*

Here, the SEC requests disgorgement in the amount of $331,765.23. The Court finds that this sum is a reasonable approximation of the gains based on the checks deposited in the Jamerica Account. (O'Brien Decl., Ex. C.) The SEC also requests prejudgment interest on that amount, totaling $42,149.52. (*Id.*, Ex. I.) "Prejudgment interest at the rate established by the Internal Revenue Service for tax underpayment is awarded on the disgorgement in order to prevent Defendants from being unjustly enriched through the time-value of the money they fraudulently obtained." *SEC v. Markusen*, No. 14-3395, 2015 WL 6962840, at *13 (D. Minn. Nov. 10, 2015). Thus, the Court will order disgorgement from defendants in the sum of $373,914.75.

## IV.   CIVIL PENALTY

The SEC also requests a civil penalty against Brown and Jamerica in an amount the Court deems appropriate. "A civil penalty is intended both to punish the individual

violator and to deter future violations of the securities laws." *Capital Sols.*, 28 F. Supp. 3d at 901 (quoting *SEC v. Brown*, 643 F. Supp. 2d 1088, 1090 (D. Minn. 2009)). The Advisers Act establishes a three-tier system for civil penalties. 15 U.S.C. § 80b-9(e)(2). In the first tier, the penalty must be less than the greater of either $5,000 for an individual or $50,000 for another entity or the "gross amount of pecuniary gain." *Id.* § 80b-9(e)(2)(A). The second tier is appropriate where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and provides for penalties of either up to $50,000 for an individual and $250,000 for an entity or the gross amount of pecuniary gain. *Id.* § 80b-9(e)(2)(B). Finally, the third tier is applicable where the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and the violation "resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* § 80b-9(e)(2)(C). Third-tier penalties may not exceed the greater of $100,000 for an individual and $500,000 for an entity or the gross amount of pecuniary gain. *Id.*

In the prior action, the Court imposed third-tier civil penalties against Brown and Jamerica in the amount of $80,000 and $400,000, respectively. *Brown*, 643 F. Supp. 2d at 1091. The Court based its decision on the "extensive, clearly-established fraud against numerous innocent investors," including evidence showing that much of the invested funds were diverted for non-investment purposes. *Id.* Here, the SEC has not put forward evidence suggesting that the current investment funds were misused. However, the fact remains that Brown and Jamerica were not deterred by the significant penalties they faced in the prior action, and chose to operate as investment advisors in violation of SEC

Order and the Adviser Act; thus, Brown and Jamerica's actions in violation of the 2011 SEC Order and Section 203(f) still "created a significant risk of substantial losses to other persons." 15 U.S.C. § 80b-9(e)(2)(C)(II). The Court will order civil penalties of $50,000 against Brown, and $100,000 against Jamerica, in an effort to deter them from future willful violations of securities law.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the SEC's Motion for Default Judgment [Docket No. 22] is **GRANTED**.

The Court further directs the Clerk of Court to enter final judgment as to defendants Sherwin P. Brown and Jamerica Financial, Inc., as follows:

### I.     PERMANENT INJUNCTIONS

**A.     IT IS HEREBY ORDERED** that Brown and Jamerica and their agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of this Order by personal service or otherwise, and each of them are permanently restrained and enjoined from violating, directly or indirectly, Section 203(f) of the Advisers Act [15 U.S.C. § 80b-3(f)] by: (a) while subject to an order issued by the Commission suspending or barring them from being associated with an investment adviser, willfully to become, or to be, associated with an investment adviser without the consent of the Commission; or (b) while acting as an investment adviser to permit any person as to whom an order issued by the Commission suspending

or barring that person from being associated with an investment adviser to become, or remain, a person associated with them or with either of them without the consent of the Commission if they or either of them knew, or in the exercise of reasonable care, should have known, of the bar or suspension order.

**B.     IT IS HEREBY FURTHER ORDERED** that Brown and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, the 2011 Order barring him from associating with any investment adviser.

## II.    DISGORGEMENT AND PREJUDGMENT INTEREST

**IT IS HEREBY FURTHER ORDERED** that defendants are jointly and severally liable for disgorgement in the amount of $331,765.23, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest in the amount of $42,149.52.  Defendants shall satisfy this obligation by paying $373,914.75 to the Securities and Exchange Commission within fourteen (14) days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm.  Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and

Exchange Commission, which shall be delivered Enterprise Services Center, Accounts Receivable Branch, 6500 South MacArthur Blvd., Oklahoma City, OK 73169, and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; the paying Defendant's name as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendants shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action.  By making this payment, Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendants.  The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after fourteen (14) days following entry of this Final Judgment.  Defendants shall pay post judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

## III.   CIVIL PENALTIES

**IT IS HEREBY FURTHER ORDERED** that defendants shall pay civil penalties in the amount of $50,000 for Brown, and $100,000 for Jamerica, to the Securities and Exchange Commission.  Defendants shall make these payment within fourteen (14) days after entry of this Final Judgment.

Defendants may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendants may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; the paying Defendant's name as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendants shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendants. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury. Defendants shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

**IV.**     **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over this action for all purposes, including to implement and enforce the terms of this Order; and

...

all other orders and decrees which may have been or may be entered in this case, and to grant such relief as this Court may deem necessary and just.

There being no just reason for delay, the Clerk of the Court is directed, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter this Order forthwith.

DATED:  March 31, 2016  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court